945 F.2d 416
 NOTICE: Federal Circuit Local Rule 47.8(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
Maximo D. CUAJUNCO, Petitioner,
v.
OFFICE OF PERSONNEL MANAGEMENT, Respondent.
 No. 91-3212.
 United States Court of Appeals, Federal Circuit.
 Sept. 5, 1991.
 
 Before NIES, Chief Judge, and PAULINE NEWMAN and PLAGER, Circuit Judges.
 PER CURIAM.
 
 DECISION
 
 1
 Maximo D. Cuajunco (Cuajunco) appeals the decision of the Merit Systems Protection Board (MSPB or Board) in Cuajunco v. Office of Personnel Management, No. SE08319010418 (Aug. 27, 1990) (petition for review denied Jan. 16, 1991). The MSPB dismissed Cuajunco's petition challenging the Office of Personnel Management's (OPM's) denial of his application for a Civil Service Retirement System annuity. The MSPB found the petition to be untimely filed. We reverse and remand with directions.
 
 OPINION
 
 2
 Cuajunco filed an application with the OPM for annuity benefits under the Civil Service Retirement Act (CSRA), claiming three periods of covered civilian service between 1933 and 1946: some number of months--the exact number is unclear--for the Insular Government of the Philippines; about 4 months for the Government of the Commonwealth of the Philippines; and just over 4 years, 11 months for the United States Navy. The OPM rejected Cuajunco's application, stating that "[he] never served in a position subject to the [CSRA]." Cuajunco requested a reconsideration. On reconsideration, the OPM then found that the 4 years, 11+ months of service for the United States Navy was creditable toward the 5 years needed to entitle Cuajunco to the annuity. The OPM also found that the 4 months of service for the Philippines Commonwealth Government was not creditable, and that "[OPM has] been unable to verify any additional service." The OPM did not categorize, as creditable or not toward a CSRA annuity, Cuajunco's alleged service for the Philippines Insular Government. Cuajunco was told that he could appeal to the MSPB within 25 days of issuance of the OPM's decision, which was dated January 5, 1989.
 
 
 3
 In a letter to the MSPB dated May 18, 1990, Cuajunco asked about the status of the appeal he claimed to have filed on February 18, 1989; a copy of that appeal was attached. The MSPB responded with a form letter dealing with a number of procedural matters, including, if applicable, the requirement for Cuajunco to establish evidence that his appeal was timely filed. Cuajunco submitted evidence why his filing of February 18, 1989 should be accepted as timely, though filed more than 25 days past the date of the OPM decision. Cuajunco did not address the issue of whether he actually did file that February 18, 1989 appeal.
 
 
 4
 The MSPB concluded that good cause existed to extend the filing period to reflect delay in the mails between the United States and the Philippines. But, the MSPB went on to conclude that, in light of the fact that the Board had no record of receiving the appeal at the time it was supposedly first sent, there was insufficient evidence that the appeal actually had been filed in 1989. The MSPB characterized Cuajunco's May 1990 letter inquiring about and attached to the copy of the 1989 appeal as the actual filing of that appeal. The MSPB then concluded that Cuajunco had not presented any excuse for the extra 15-month delay in filing, and treated the 1990 submission as untimely. The MSPB added that, even if Cuajunco's claim of filing in February 1989 were accepted, he failed to exercise due diligence in pursuing that appeal by waiting 15 months before inquiring about its status.
 
 
 5
 Hindsight tells us that, since the Board had no record of Cuajunco's 1989 submission of his appeal, in order for Cuajunco to succeed he needed to establish that either 1) the 1989 submission in fact was made, and was excusably late; or 2) the 1990 letter and appeal copy were excusably filed late. However, nothing in the MSPB's form letter to Cuajunco suggested that there was any question about whether he had filed an appeal at all in February 1989, as apart from whether the lateness of that filing should be excused. For that matter, nothing in the form letter affirmatively stated that a question of lateness definitely existed at all--only the non-specific possibility was raised.
 
 
 6
 In response to the form letter, Cuajunco reasonably replied with material establishing why, although technically out of time, because of mail delays his 1989 appeal was in fact timely. Therefore, the issue of whether or not Cuajunco actually filed his appeal in February 1989 was not addressed, through no fault of Cuajunco's. The MSPB conclusion regarding Cuajunco's due diligence in pursuing the alleged 1989 appeal raised a good point, but one that was also not addressed, for the same reasons.
 
 
 7
 The OPM first rejected Cuajunco's application summarily. On reconsideration, the OPM again rejected the application, finding in effect that a lack of 'verification' for one of the periods of employment claimed by Cuajunco left him 28 days short of the required 5 years creditable service. No guidance was given Cuajunco as to what type of information he should submit on 'verification', either to the OPM or, if appealed, to the MSPB. The MSPB then rejected his appeal as untimely, based on an issue he had no reason to know was present. Once Cuajunco knew what concerned the MSPB, they refused to reconsider the decision.
 
 
 8
 For a petitioner such as Cuajunco to go through two proceedings before the OPM, followed by two at the MSPB, without getting any understandable and reasonable guidance as to what evidence or proof he is expected to submit at that or the next stage, wastes everyone's time, energy and expense. The mere propagation of such misunderstandings, so easily recognized and corrected, if not prevented, by the agency involved, could only serve to frustrate the intent of Congress in providing for the underlying benefit or process at issue. The system must be meant to help people identify and acquire that to which they are rightfully entitled, rather than to continually put roadblocks in their way, regardless of their actual entitlement.
 
 
 9
 When reviewing a decision of the MSPB, this court must affirm that decision unless it is found to be:
 
 
 10
 1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 
 
 11
 2) obtained without procedures required by law, rule or regulation having been followed; or
 
 
 12
 3) unsupported by substantial evidence.
 
 
 13
 See 5 U.S.C. § 7703(c) (1988); Covington v. Department of Health and Human Services, 750 F.2d 937, 941 (Fed.Cir.1984). The MSPB decision in this case was arbitrary, capricious, and an abuse of discretion. In the interests of justice, we remand with directions to the MSPB to decide the merits of the appeal. We note the fact that the OPM could not "verify any additional service", leaving Cuajunco lacking less than 1 month's creditable service without a finding disqualifying his alleged service for the Philippines Insular Government. Either on its own or if deemed appropriate by direction on remand to the OPM, the MSPB should determine whether such service was performed, and whether it is creditable. If needed, Cuajunco should be advised of the type of additional evidence which would reasonably be deemed sufficient at this time, 55 years after the alleged employment.